UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-506

JOSEPH LEON THOMAS and
ARNOLD THOMAS VAN ETTEN                                                              PLAINTIFFS

V.

WACHOVIA BANK, N.A.                                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs Joseph Leon Thomas and Arnold Thomas Van Etten ("Thomas" and "Van Etten") filed suit in Jefferson Circuit Court requesting a declaratory judgment that Kentucky law applies to guaranties they signed with Defendant Wachovia Bank, N.A. ("Wachovia"), and, therefore, that they are not personally liable on the guaranties. Following the Defendant's removal to this Court on July 17, 2009, Plaintiffs moved to remand and Defendant filed a motion to dismiss.

The Court will consider, in turn, the motion to remand, the choice of law issues and the request for dismissal. For the reasons that follow, the Court will deny Plaintiffs' motion to remand, find that Kentucky law does not govern, and deny Defendant's motion to dismiss.

I.

Plaintiffs Thomas and Van Etten, along with Virginia resident Thomas Smith ("Smith"), are members of Old South Properties LLC ("Old South"), a Kentucky limited liability company. Old South and Florida resident Larry Becker are partners in LT Properties, a Tennessee general

partnership. Defendant is a banking corporation, with its principal place of business in North Carolina. In 2006, Plaintiffs approached a branch of Defendant's bank and borrowed, on behalf of LT Properties, $739,648.00 for the purchase of a condominium on Florida's Santa Rosa Beach. Defendant secured the loan with a mortgage on the property. In addition to the promissory note signed by LT Properties, Wachovia required Plaintiffs, along with Smith and Becker, to sign separate personal guaranties. The guaranties provide that they are to be "governed by and construed under the laws of the state named in Bank's address shown above without regard to the state's conflict of laws principles." The address on the guaranties is Wachovia Bank, National Association, Jacksonville, Florida 32202. Plaintiffs signed the agreements in Kentucky and mailed them to the bank.

LT Properties made payments on the note through June 2008; Old South continued the payments through October 2008. Despite those payments, Defendant contends that $697,569.44 is still owed on the note. In July 2009, Plaintiffs filed this declaratory relief action in Jefferson County Circuit Court requesting a determination that 1) Kentucky law applies to Plaintiffs' respective guaranties and 2) that Plaintiffs are not personally liable on the guaranties. After removing this case to federal court, Defendant filed a motion to dismiss.

II.

This Court will first address Plaintiffs' motion. Plaintiffs make two arguments for remand: 1) the amount in controversy required for diversity jurisdiction is not met and 2) the *Burford* abstention doctrine applies.

2

A.

A federal court has subject matter jurisdiction through federal question or diversity jurisdiction. 28 U.S.C. §§ 1331-32. Defendant has the burden of proving subject matter jurisdiction. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). Here, Defendant's removal is based on diversity jurisdiction, which requires diversity of citizenship and an amount in controversy greater than $75,000. *See* 28 U.S.C. § 1332. Plaintiffs are Kentucky citizens and Defendant is a North Carolina corporation. The disputed issue is whether Plaintiff's claim for declaratory relief meets the required amount in controversy.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt. v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Here, the personal guarantees Plaintiffs seek to invalidate are worth about $700,000. If their relief is denied, they are potentially personally liable for nearly $700,000. It matters not that Plaintiffs may later be deemed to owe less or nothing on the guaranties. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citing *Worthams v. Atlanta Life Ins. Co.*, 553 F.2d 994 (6th Cir. 1976)) ("When determining whether the amount in controversy has been satisfied, we examine the complaint at the time it was filed. ... Jurisdiction, once established, cannot be destroyed by a subsequent change in events."). Thus, the amount in controversy requirement for diversity jurisdiction is met.

B.

Plaintiffs next contend that this Court should abstain under the doctrine of *Burford* abstention. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). In *Burford,* the U.S. Supreme Court held that abstention was appropriate where the issues are clearly a matter of state policy and

federal intervention would have caused delay and conflict.[1]  *Id.*  Later, in *Quackenbush v. Allstate Ins. Co.*, the Supreme Court said that Burford allows a federal court "to dismiss a case only in extraordinary circumstances." 517 U.S. 706, 726 (1996).  It went on to say that Burford abstention

> allows a federal court to dismiss a case only if it presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*Id.* at 727, citing *New Orleans Pub. Serv., Inc v. Council of New Orleans*, 491 U.S. 350, 361 (1989).  The issues raised here do not constitute difficult questions of state law that involve important policy issues.  Rather, the assertions require a standard choice of law analysis of the sort regularly handled by federal courts, including this one.  There is also no coordinated or active state effort that a decision here could hinder, delay or thwart.  Put simply, this case is not a case of the sort contemplated by *Burford*.

II.

Plaintiffs ask this Court to find that Kentucky law controls their guaranty agreements and that, therefore, they are not personally liable under their respective guaranties. Plaintiffs offer no other reason here for why they are not liable. Defendant argues Florida law should apply, and that the guaranties are enforceable.

As the forum state of a federal district court exercising original jurisdiction, Kentucky's choice of law rules apply.  *See* 28 U.S.C. § 1338(a), (b); 15 U.S.C. § 1121; *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996) (stating that pendant state claims follow

---

[1] The issue in *Burford* involved a complex Texas regulatory scheme. Many of the cases where federal courts abstain under *Burford* involve complex or evolving regulatory or administrative actions.

4

the choice of law of the forum). In the 1960s, Kentucky adopted an "interest analysis" approach, in place of its former and more rigid *lex loci* approach, to determine the state with the most significant contacts with the litigation. *Wessling v. Paris*, 417 S.W.2d 259, 260-261 (Ky. 1967). Since that occasion, Kentucky courts have never applied precisely the same language to their choice of law standard.

The very next year, in fact, the Kentucky Supreme Court said that if Kentucky has "enough contacts," though not necessarily the most significant contacts, then the courts should apply Kentucky substantive law to the dispute. *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. 1968). More recently, in an insurance contract case, the Kentucky Supreme Court said that applying the "interest analysis" gives to the forum having the most interest in the problem paramount control of the legal issues. *Breeding v. Massachusetts Indem. and Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982).[2]

This has led to some confusion in Sixth Circuit cases. The Sixth Circuit noted that the *Breeding* case stood for the proposition that Kentucky will apply its own law "if there are significant contacts and no overwhelming interests to the contrary." *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983). Later, in *Wallace Hardware Co. v. Abrams*, a case relied upon heavily by Defendant, the Sixth Circuit held that Kentucky courts would apply Restatement (Second) of Conflict of Laws § 187 in a commercial breach of contract case to honor a provision in the contract selecting another state's law. 223 F.3d 382 (6th Cir. 2000).[3]

---

[2] See also *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355 (Ky. Ct. App. 1987) (applying an interest-based approach); *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.,* 898 F.Supp. 1198 (W.D. Ky. 1995) (applying an interest-based approach, but coming to the opposite result).

[3] The Wallace case was similar in many ways to the present case. It involved the attempted enforcement, by an out-of-state company, of a personal guaranty against Kentucky residents. *Wallace,* 223 F.3d at 386-90. The

After considering these conflicts cases, this Court concludes that if there are sufficient contacts to consider applying Kentucky law, Kentucky courts would apply an interest-based analysis. Within the interest analysis, Kentucky continues to give some preference to its own laws and policies.

The facts giving rise to this case start with Plaintiffs' partnership, LT Properties, obtaining a loan from a Florida branch of Defendant's bank to buy property in Santa Rosa Beach, Florida. Defendant secured the loan with a mortgage on the property. Plaintiffs signed personal guaranties on the loan, which they mailed from Kentucky. Defendant is banking corporation and citizen of North Carolina for the purposes of litigation, and the guaranties Plaintiffs signed provided that Florida law would apply. From these facts, it appears that Kentucky has few contacts with the transaction, as compared to Florida. Plaintiffs, along with a Florida resident, chose a Florida branch of Defendant's bank to get a loan, and used that loan to purchase Florida property. They signed contracts providing Florida law would apply. The only contact with Kentucky is that Plaintiffs are residents of Kentucky and they mailed their personal guaranties from here. Within the context of this case, these connections are not significant enough to warrant an interest analysis. The Court concludes that they are certainly insufficient to warrant application of Kentucky law.

---

Kentucky residents in that case, as in this one, argued that Kentucky's enactment of KRS 371.065 should invalidate the contractual choice of law provision. *Id.* at 399. The Sixth Circuit disagreed, however, holding that the statute alone was not enough to invalidate the choice of Tennessee law in the contract. *Id.*

III.

The Court next addresses Defendant's motion to dismiss under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In ruling upon a motion to dismiss, "the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *United States v. Community Health Sys. Inc.*, 51 F.3d 493, 502 (6th Cir. 2007).

Though the Court has determined Kentucky law does not apply to the personal guaranties, that decision, alone, is not enough to dismiss Plaintiffs' case. Defendant has not addressed why the complaint should be dismissed under any other law, nor have Plaintiffs offered any other facts or law that would allow them to prevail. As such, this Court will allow Defendant thirty days in which to supplement its motion to dismiss. Plaintiffs may respond accordingly. Thus, Defendant's motion is denied, pending further briefing by the parties.

The Court will enter an Order consistent with this Memorandum Opinion.

cc:  Counsel of Record